IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RORY V. DONNELL,
     Plaintiff,

vs.                                Case No. 3:03cv253/RV/EMT

SGT. MAPLES,
BARBARA JOHNSON,
G. RHODES,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

     This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon Defendants'
special reports, supporting documents, and supplemental pleadings (Docs. 63, 64, 90, 91, 92).  The
pro se Plaintiff, a state prisoner who is proceeding in forma pauperis in this action,[1] responded to
the special reports (Doc. 76, 107).  On April 28, 2005, this Court entered an order advising the
parties of the importance and ramifications of Rule 56 summary judgment consideration, and
informing the parties that the special reports would be construed as motions for summary judgment
as of May 31, 2005 (Doc. 111).  Plaintiff filed additional argument and Rule 56 materials on May
26, 2005 (Doc. 115).  Upon review of the submissions of the parties, it is the opinion of the
undersigned that the motion for summary judgment filed by Defendants should be denied.

I.      BACKGROUND

     The following facts are without substantial controversy.  Plaintiff was housed in the
segregation unit (administrative confinement) at the Okaloosa Correctional Institution (OCI) on
October 5-9, 2002.  Defendants Rhodes and Maples were employed as security officers at OCI at

---

[1]Court records reflect that as of May 14, 2004, Plaintiff has paid the $150.00 filing fee.

that time and worked the shift from 7:00 a.m. to 3:00 p.m.  Plaintiff was not experiencing medical problems at 2:00 a.m. on October 5, 2002, however, at 10:00 a.m. Plaintiff began experiencing severe pain and believed he was suffering a collapsed lung and pneumothorax.  Neither Defendant Rhodes nor Defendant Maples sought medical care for Plaintiff on October 5 or 6, 2002.

On October 7, 2002, Plaintiff declared a medical emergency.  He was taken to the medical department and seen by Defendant Johnson, a registered nurse.  Plaintiff complained to Nurse Johnson that he was experiencing shortness of breath, coughing, and a stuffy nose.  Plaintiff did not complain of stomach pain, vomiting, nausea, indigestion, or heartburn.  He informed Nurse Johnson he believed his right lung had collapsed, and he had developed pneumothorax.  Plaintiff informed her that his medical records from 1997 in his cell would show his susceptibility to pneumothorax. Nurse Johnson tested Plaintiff's breathing patterns, reviewed his complexion, reviewed his symptoms to determine whether he was dehydrated, observed the coloration of his fingernails, and checked the oxygen level in his blood.  Upon evaluation, Nurse Johnson determined Plaintiff did not appear to have a collapsed lung or pneumothorax, as Plaintiff was not experiencing air hunger and did not have any discoloration around his lips or fingernails, both of which are symptoms associated with collapsed lungs and/or pneumothorax.  Nurse Johnson determined no treatment was required and ordered Plaintiff be returned to his cell with instructions to increase his fluid intake and request sick call if his symptoms persisted.

The next day, on October 8, Plaintiff declared another medical emergency.  He was taken to the medical department and complained that he had submitted a sick call request, but had not been seen by the medical staff.  Plaintiff was returned to his cell without examination.

On October 9, 2002, at 9:30 a.m., Plaintiff complained to a nurse making rounds in the segregation unit that he was experiencing pain in his right chest, shortness of breath, persistent cough, and burning in his stomach.  The nurse examined Plaintiff and summoned a physician's assistant.  The physician's assistant reviewed Plaintiff's medical history, which indicated a history of pneumothorax since 1997 as well as a history of asthma, and ordered Plaintiff transported to a local emergency room for evaluation and treatment.  Plaintiff was immediately transported to the North Okaloosa Medical Center.

At the emergency room, Plaintiff received x-rays and was diagnosed as suffering a large right pneumothorax with a history of recurrent pneumothorax involving the left lung and bullous lung disease.  Two procedures were conducted on October 9 requiring local anaesthesia and the placement of several tubes in Plaintiff's chest.  The procedures were only partially successful, therefore, Plaintiff underwent a thoracotomy and bullectomy on October 16, 2002.  After his surgery, Plaintiff continued to have a fever and complained of increasing abdominal pain.  He was diagnosed with a cystic duct obstruction.  Plaintiff underwent an emergency laproscopic cholecystectomy and removal of his gall bladder on October 25, 2002.

The parties' versions of the facts significantly diverge as to whether Plaintiff declared medical emergencies or requested medical attention from Defendant Rhodes on October 5, 2002.  Plaintiff states he told Defendant Rhodes on October 5 at 10:00 a.m. that he was experiencing severe pain and declaring a medical emergency for a collapsed right lung and pneumothorax (Doc. 71, Donnell Aff. ¶¶ 6-7).  Plaintiff states Defendant Rhodes responded, "Yeah right" (*id*., ¶ 8).  Plaintiff states thirty minutes later he again told Defendant Rhodes he was experiencing severe pain and declaring a medical emergency for a collapsed lung and pneumothorax, and Defendant Rhodes responded, "In a minute" (*id*., ¶¶ 6-8).  Defendant Rhodes states Plaintiff did not inform him that he was declaring a medical emergency or that he required medical treatment on October 5 or 6 (Doc. 92, Rhodes Aff. ¶ 9).  Rhodes further states the Daily Record of Segregation shows Plaintiff did not declare a medical emergency on October 5 or 6 (*id*., ¶ 11).

Likewise, the parties' versions of the facts significantly diverge as to whether Plaintiff informed Defendant Maples he was declaring a medical emergency on October 6, 2002.  Plaintiff states he told Defendant Maples on October 6 at 8:30 a.m. that he was declaring a medical emergency for a collapsed right lung and pneumothorax, and that he was experiencing severe pain, difficulty breathing, and a painful cough (Doc. 71, Donnell Aff. ¶ 9).  Plaintiff states Defendant Maples responded, "I'm busy," and told Plaintiff to lie down (*id*., ¶ 10).  Defendant Maples states the Daily Record of Segregation shows Plaintiff did not declare a medical emergency on October 5 or 6 (Doc. 64, Maples Aff. ¶ 10).

As to Defendant Johnson, the parties' versions of the facts significantly diverge as to whether Plaintiff informed Nurse Johnson that he was suffering chest pain.  Plaintiff states he informed her

he was experiencing chest pain and shortness of breath (Doc. 107, Donnell Aff. ¶ 15).  Defendant Johnson states Plaintiff complained of shortness of breath, a cough, and a stuffy nose (Doc. 64, Johnson Aff. ¶ 3).  Additionally, Nurse Johnson states she listened to Plaintiff's lungs during the course of her examination, and Plaintiff's breath sounds were clear and undiminished, and he was not experiencing difficulty breathing (Doc. 64, Johnson Aff. ¶ ¶ 4, 5, 8).  Plaintiff disputes that Nurse Johnson listened to his lungs, and states he was experiencing difficulty breathing and shortness of breath (Doc. 64, Sworn Statement of Rory Donnell, p. 15; Doc. 107, Donnell Aff. ¶ 15).

II.     PROCEDURAL HISTORY

Plaintiff filed his fourth amended complaint against F. Maples, B. Johnson, G Rhodes, D. Poore, S. Schwartz, and the Florida Department of Corrections alleging civil rights violations under 42 U.S.C. § 1983 (denial of adequate medical treatment in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments) (Doc. 81).  Plaintiff's claims against Defendants Poore, Schwartz, and the Florida Department of Corrections were dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (Docs. 80, 85).

Plaintiff seeks to hold Defendants Rhodes and Maples liable for failing to respond to his requests for medical treatment.  He seeks to hold Defendant Johnson liable for failing to provide adequate medical treatment.  Plaintiff contends Defendants "acted with deliberate indifference to Plaintiff's serious medical needs by delaying or denying Plaintiff access to adequate medical care for Plaintiff's life threatening  conditions" (Doc. 81, ¶ ¶ 53, 56, 59).  As relief, Plaintiff seeks a declaratory judgment, monetary damages, and injunctive relief (*id.*, ¶ 70).

Defendants, in their motion for summary judgment, argue that they are entitled to summary judgment because Plaintiff's amended complaint fails to establish a constitutional violation.  Additionally, they contend they are entitled to qualified immunity, arguing that Plaintiff cannot meet the burden of demonstrating that he had a "serious medical need" and that Defendants disregarded such a need with conduct that was more than negligence (Doc. 63 at 7-13).

III.    DISCUSSION

A.     Summary Judgment Standard

To prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove

his case at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 1210, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law."  *Id.*  *Accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  Further, Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a scintilla of evidence or conclusory allegations is insufficient.  Celotex, 477 U.S. at 324.  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  Celotex, 477 U.S. at 324; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"), *cert. denied*, 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to Plaintiff. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1284 (11th Cir. 1999).  A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56; Celotex, 477 U.S. at 322.

B.     Eighth Amendment Standard

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners.  Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991).  Medical

treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1505 (citing <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice do not rise to the level of constitutional violations.  *Id.* (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment.  *Id.* (citations omitted).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component.  <u>Taylor v. Adams</u>, 221 F.3d 1254, 1257 (11th Cir. 2000), *cert. denied*, 531 U.S. 1077, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'"  *Id.* (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (internal quotation omitted)).  Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment.  *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements.  <u>Taylor</u>, 221 F.3d at 1258.  As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need."  <u>Estelle</u>, 429 U.S. at 104, 97 S.Ct. 285.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Hill v. DeKalb Regional Youth Detention Center</u>, 40 F.3d 1176, 1187 (11th Cir. 1994); *abrogated on other grounds by* <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *see* <u>Farmer v. Brennan</u>, 511 U.S. 825, 834,114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm.").  In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain."  <u>Estelle</u>, 429 U.S. at 105-106, 97 S.Ct. 285 (internal quotation marks omitted); *see* <u>Taylor</u>, 221 F.3d at 1257; *see also* <u>Adams v. Poag</u>, 61 F.3d 1537, 1543 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference."   Estelle, 429 U.S. at 105, 97 S.Ct. 285. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  Farrow v. West, 320 F.3d 1235, 1245-46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).   "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care.  Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980). "Summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's subjective knowledge, as follows: 'since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness.'" Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir.1999) (quoting Steele v. Shah, 87 F.3d 1266, 1269 (11th Cir.1996)).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference.  Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).  Deliberate indifference may also be established by a showing of grossly inadequate care. McElligott, 182 F.3d at 1255 (citations omitted).  Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir.1985).  However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made.  Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)).   To do otherwise would be "to constitutionalize claims that sound in tort law."  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

C.     Qualified Immunity

Defendants claim they are entitled to qualified immunity from suit in their individual capacities.  The doctrine of qualified immunity is a guarantee of fair warning.  McElligott, 182 F.3d at 1260.  It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct.  Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); Conn v. Gabbert, 526 U.S. 286, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); Powell v. Ga. Dep't of Human Res., 114 F.3d 1074 (11th Cir. 1998).  Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right.  McElligott, 182 F.3d at 1260 (citing United States v. Lanier, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  Id. at 1194.  The Supreme Court has established a two-part test for evaluating a claim of qualified immunity.  First, the trial court must determine whether a constitutional right has been violated on the facts alleged.  Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).  The court must assess the facts in a light most favorable to the party asserting the injury.  Id.  Second, if a violation has been established, the court must determine whether the right was "clearly established" at the time of the event.  Id.  The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity.  Hope, 122 S.Ct. at 2515; Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar.  Hope, 122 S.Ct. at 2516.  Instead, the law merely

must give Defendants "fair warning" that their actions are unconstitutional.  *Id*.  In light of pre-existing law, the unlawfulness must be apparent.  *Id*.; Creighton, 483 U.S. at 640.

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting Jenkins v. Talladega City Bd. of Education, 115 F.3d 821, 826 n.4. (11th Cir. 1997)).

      D.     Conclusions of Law Regarding Material Facts

Defendants maintain they are entitled to summary judgment on qualified immunity grounds.  They argue:

> The entire chronology of the relevant events set forth in the Plaintiff's medical records and in the Affidavits of the Defendants show that the Plaintiff failed to meet th[is] burden [set forth in Estelle v. Gamble, 429 U.S. 97 (1976)].  There is no proof of an acceptable "serious medical need" because there is no evidence of an ignored physician diagnosis or of an "easily recognizable" condition.  Furthermore, there is no evidence of conduct in disregard of such a need which rises beyond the level of even plain negligence.

(Doc. 63 at 12-13).  Thus, they maintain Plaintiff has failed to establish they committed a constitutional violation.[2]

    The problem with Defendants' argument is that there is evidence Plaintiff had a serious medical need, and that Defendants were aware of his need and recklessly disregarded it.  In analyzing whether Defendants are entitled to qualified immunity, the court must take the "facts" in the light most favorable to **Plaintiff** and determine the legal issue of whether Plaintiff's "facts," if proven, show that Defendants violated clearly established law.  Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000) (citing Kelly v. Curtis, 21 F.3d 1544, 1546 (11th Cir. 1994)).  The court has already set forth the facts which, based on the summary judgment record, are not in dispute.  Plaintiff's medical records from the emergency room on October 9 show upon his arrival at the hospital, he was suffering a large pneumothorax in his right lung.  The parties sharply dispute whether Plaintiff's chest pain and declaration of a collapsed lung on October 5 and 6 were easily

---

[2]The parties do not dispute that Defendants performed the alleged wrongful acts while acting within the discretionary authority of their employment.

recognizable as requiring medical attention, and whether Defendants were aware of his need for medical attention and recklessly disregarded it.  These factors are critical to Plaintiff's claim. Taking the summary judgment evidence in the light most favorable to Plaintiff, Plaintiff has stated a constitutional violation. Based upon Plaintiff's version of the facts, a reasonable jury could find that on October 5 and 6, Plaintiff was suffering severe pain which obviously warranted medical attention.  Additionally, a reasonable jury could find that Plaintiff declared medical emergencies to Defendants Rhodes and Maples and informed them he was suffering severe pain from a collapsed lung and pneumothorax, and they knowingly ignored his requests for medical attention. Furthermore, a reasonable jury could conclude Plaintiff would have received medical attention if Defendants Rhodes and Maples had responded to his requests for medical attention.  Given these facts, Defendants' failure to seek medical attention for Plaintiff constituted a denial of adequate medical care in violation of the Eighth Amendment.

As to Defendant Johnson's alleged failure to provide adequate medical care, according to Plaintiff, he informed Nurse Johnson he was experiencing chest pain, and it is undisputed Nurse Johnson knew Plaintiff was complaining of shortness of breath, a cough, and a stuffy nose.  Nurse Johnson also knew that Plaintiff believed he was suffering a collapsed lung and pneumothorax, and Plaintiff informed her he had medical records in his cell which supported his contention. Additionally, according to Plaintiff, Nurse Johnson did not listen to his breath sounds (Nurse Johnson's Rule 56 material indicates she did), but he does not dispute that Nurse Johnson took his vital signs, including his respiration rate, tested his breathing patterns by taking one "PF" reading, reviewed his complexion, reviewed his symptoms to determine whether he was dehydrated, observed the coloration of his fingernails, and checked the oxygen level in his blood.  Plaintiff does not dispute the results of Nurse Johnson's examination to the extent it showed Plaintiff's skin was warm, he had beads of sweat on his forehead, his lung capacity refill was rapid, he was not experiencing air hunger, and he did not have any discoloration around his lips or fingernails. However, Plaintiff does dispute Nurse Johnson's statement that his breath sounds were clear, undiminished, and normal, and that he was in no apparent respiratory distress.  According to Plaintiff, his respiratory status was altered, as evidenced by his shortness of breath, thereby requiring Nurse Johnson to immediately notify a physician, or at least obtain two "PF" readings, according

to the Respiratory Assessment form submitted by Nurse Johnson in her Rule 56 material (Doc. 64, Johnson Aff., Ex. A).

Based upon Plaintiff's version of the facts, that he complained to Nurse Johnson of severe chest pain, shortness of breath, and a cough; that he informed her of his history of pneumothorax; and that she returned him to his cell without listening to his lungs, immediately notifying a physician or, or obtaining two "PF" readings, a reasonable jury could conclude Nurse Johnson was aware of a risk of serious harm to Plaintiff and knowingly disregarded that risk.  Additionally, a reasonable jury could conclude that adequate medical treatment would have eliminated the injuries of which Plaintiff complains.  Thus, Plaintiff has established Defendant Johnson deprived him of his right to adequate medical care under the Eighth Amendment.

In their special report, Defendants argued only that there was no constitutional violation, but failed to contend that their conduct, if unconstitutional, did not violate clearly established law at the time of which Plaintiff complains (*see* Docs. 63 at 12-13, Doc. 91 at 8-9).  Accordingly, this Court addresses only whether Defendants are entitled to qualified immunity on the theory that there was no constitutional violation.  *See* Farrow, 320 F.3d at 1249 n.22.

IV.    CONCLUSION

Based on the foregoing, the undersigned concludes that Defendants are not entitled to summary judgment on Plaintiff's Eighth Amendment claims, nor are they entitled to the defense of qualified immunity on these claims.  Of course the court does not on this record resolve the disputed factual issues.  It will be Plaintiff's burden to prove his version of the facts to a jury.

Accordingly it is respectfully **RECOMMENDED** that Defendants' motions for summary judgment (Docs. 63, 91) be **DENIED**.

At Pensacola, Florida this 18th day of July, 2005.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**